UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN MICHAEL ISLEY,<br><br>                Plaintiff,<br>    v.<br><br>DAVID OSTER, *et al.*,<br><br>                Defendants. | Case No.  C09-1800-RAJ-BAT<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff John Isley filed this action while confined in the Snohomish County Jail in 2009.  He alleges in his complaint that he was housed in the segregation unit for a total of 44 days without just cause.  He further alleges that he was improperly denied outdoor recreation time while housed in segregation.  Plaintiff identifies the following defendants in this action:  David Oster, Classification Supervisor at the Snohomish County Jail; Terry Bloss, Classification Counselor at the Snohomish County Jail; and Snohomish County Corrections Sergeant Moody.

REPORT AND RECOMMENDATION
PAGE - 1

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed no response to defendants' motion. This Court, having reviewed defendants' motion, and the balance of the record, concludes that defendants' motion for summary judgment should be granted and that plaintiff's complaint, and this action, should be dismissed with prejudice.

## BACKGROUND

On June 12, 2009, plaintiff was booked into the Snohomish County Jail (the "Jail") on a warrant for failure to appear on a charge of Failure to Register as a Sex Offender. (*See* Dkt. No. 18 at 5.) Plaintiff was thereafter assigned to a high security living module based on the nature of his charge, his criminal history, and his prior incarceration history. (Dkt. No. 17 at 6.) On June 21, 2009, plaintiff was moved to a different high security module after it was alleged that he had slapped another inmate in the face. (*Id.*) Plaintiff was not disciplined for this incident, he was merely moved to another, equivalent, housing module in order to keep him separate from the other inmate. (*Id.*)

On October 16, 2009, it was reported to corrections staff that plaintiff had been "threatening" and "strong-arming" one or more inmates in his living module. (*See* Dkt. No. 16 at 2; Dkt. No. 17 at 6.) As a result of these allegations, and previous alleged behavior by plaintiff, plaintiff was moved to a maximum security living module. (*Id.*) On October 17, 2009, a classification memorandum was sent to plaintiff advising him that he had been classified to maximum security for reasons of safety and security. (Dkt. No. 17 at 6-7 and Ex. C.)

On October 20, 2009, the Jail classification committee reviewed plaintiff's classification status and determined that his maximum security classification should be maintained for purposes of Jail safety and security. (Dkt. No. 16 at 2; Dkt. No. 17 at 7.) The following day,

October 21, 2009, Classification Counselor Terry Bloss visited plaintiff to explain the change in his classification. (Dkt. No. 16 at 3.) Plaintiff became agitated and claimed that the allegations of "strong-arming" were lies. (*Id*.) When Bloss informed plaintiff that the classification committee had reviewed, and agreed with, plaintiff's re-classification, plaintiff screamed vulgar insults and threats at Bloss. (*Id*.) Other inmates in the module during plaintiff's outburst became agitated and told plaintiff to stop yelling. (*Id*.) Plaintiff threatened the other inmates as well. (*Id*.)

As a result of this incident, Christopher Bly, the Operations Captain at the Jail, issued a memorandum advising plaintiff that he was being placed in administrative segregation for reasons of safety and security based on behavior which included attempting to intimidate jail staff and inciting other inmates. (Dkt. No. 18 at 5 and Ex. D.) Administrative segregation is a non-disciplinary, maximum custody, status which provides restrictive isolation of an inmate and is intended to ensure the safety of the inmate and others, as well as the security of the facility. (*See* Dkt. No. 17 at 4-5 and Ex. B at 2, 5-6.) Administrative segregation may be imposed for various reasons including chronic and/or ongoing behavioral problems such as threatening, inciting, and strong-arming. (*See id*., Ex. B at 5-6.)

On November 3, 2009, prior to a classification committee meeting at which plaintiff's status was to be reviewed, Bloss met with plaintiff again. (*See* Dkt. No. 16 at 3 and Dkt. No. 17 at 7.) During the meeting with Bloss, plaintiff told Bloss that his previous tirade against her was justified and that she was wrong to walk away when he accused her of lying and called her names. (Dkt. No. 16 at 3.) Bloss construed plaintiff's comments as an attempt to manipulate her into agreeing that he had not acted in a threatening manner during their previous encounter. (*Id*.) The classification committee thereafter determined that plaintiff should remain on administrative

REPORT AND RECOMMENDATION
PAGE - 3

segregation status for purposes of safety and security. (Dkt. No. 16 at 3-4.) The classification committee subsequently reviewed plaintiff's administrative segregation status on a weekly basis for a period of eight weeks and each time determined that plaintiff's segregation status should be maintained. (*Id*. at 4.)

On January 5, 2010, Classification Supervisor David Oster and Jail Captain Finsen, met with plaintiff to discuss his classification. (*See* Dkt. No. 17 at 8.) At that meeting, plaintiff indicated his continued displeasure with his administrative segregation classification and Oster and Finsen discussed their expectations of plaintiff were he to be re-classified to a less restrictive status. (*Id*.) Plaintiff was subsequently re-classified to a less restrictive status after the classification committee concluded that, in light of plaintiff's recent behavior, he no longer presented a safety or security risk to Jail staff or to other inmates. (*Id*.) Plaintiff's classification status was thereafter reviewed on a monthly basis. (*Id*.)

Plaintiff's conduct and demeanor improved only marginally following his release from administrative segregation. (Dkt. No. 17 at 8-9.) However, plaintiff was never re-classified again to administrative segregation prior to his April 6, 2010, release from the Jail into the custody of the Washington Department of Corrections. (*Id*.)

### DISCUSSION

### Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

REPORT AND RECOMMENDATION
PAGE - 4

(1986).  Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*.  Material facts are those which might affect the outcome of the suit under governing law.  *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party.  *Id*. at 248.

## Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## Due Process

Plaintiff asserts in his complaint that that he was improperly classified to administrative segregation from October 23, 2009 until December 6, 2009.  (See Dkt. No. 5 at 3-4.)  He claims that he was never served with an infraction or incident report after being taken to secured

housing on October 15, 2009.  (Dkt. No. 5 at 3.)  He further claims that after he was advised by Classification Counselor Bloss that he was being permanently re-classified to the 23 hour lock-down unit, he attempted to argue that he was being punished, but Bloss simply turned and walked away.  (*Id*.)  According to plaintiff, as Bloss turned away, he made comments about her "lack of moral fiber" and her "poor parenting skills" and she then immediately had him placed in the segregation unit.  (*Id*.)  Plaintiff appears to be of the belief that his placement in administrative segregation constituted improper punishment.  While plaintiff does not identify in his complaint what constitutional right he believes was violated by his alleged improper classification to administrative segregation, his claim appears to implicate his rights under the Due Process Clause.

When a detainee challenges some aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, the issue to be decided is the detainee's right to be free from punishment.  *Bell v. Wolfish*, 441 U.S. 520, 533 (1979).  As explained by the Supreme Court in *Bell*, "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Id*. at 535.

While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense.  *Id*. at 537.  Thus, the test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].  *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963).

REPORT AND RECOMMENDATION
PAGE - 6

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. at 546.  The Supreme Court has further recognized that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id*. at 547.

Defendants argue in their motion for summary judgment that plaintiff's constitutional rights were not violated by his placement in administrative segregation.  Defendants maintain that plaintiff was classified to administrative segregation because of safety concerns associated with his threatening and anti-social behavior and that the classification decision was justified and reasonable.

Classification Counselor Bloss, in a declaration submitted in support of defendants' summary judgment motion, describes the events which preceded plaintiff's classification to administrative segregation in October 2009.  (*See* Dkt. No. 16.)  Specifically, Bloss states that when she met with plaintiff on October 21, 2009, to explain the change in his classification status from high security to maximum security, plaintiff became agitated and claimed that the allegations of "strong-arming" other inmates were "bullshit lies."  (*Id*. at 3.)  When Bloss informed plaintiff that the classification committee had reviewed, and agreed with, the re-classification, plaintiff screamed insults at her calling her a "fucking cunt" and a "bitch liar" and saying that she and her whole family were "liars."  (*Id*.)  Plaintiff also threatened to run Bloss over if he saw her on the streets.  (*Id*.)  According to Bloss, plaintiff's outburst caused other

REPORT AND RECOMMENDATION
PAGE - 7

inmates in the module to become agitated and frenzied and, when other inmates told plaintiff to stop yelling, plaintiff threatened them as well. (Dkt. No. 16 at 3.)

As a result of this incident, Captain Christopher Bly approved plaintiff's placement in administrative segregation and advised plaintiff of the reasons for this placement in a memorandum issued on October 21, 2009. (See Dkt. No. 18 at 5 and Ex. D.) Captain Bly identified safety and security, inciting, and attempting to intimidate as the reasons for the administrative segregation placement. (*Id*., Ex. D.)

While plaintiff suggests in his complaint that his re-classification to administrative segregation status was a retaliatory action by Counselor Bloss, he offers no evidence to rebut defendants' evidence that he was placed in administrative segregation only after engaging in threatening and intimidating behavior and causing a significant disruption in his living module. Plaintiff also fails to rebut defendants' evidence that he subsequently attempted to manipulate Bloss into agreeing that the behavior which resulted in his segregation classification was not, in fact, threatening.

The evidence in the record supports defendants' assertion that plaintiff was not classified to administrative segregation, and maintained on segregation status, in order to punish or retaliate against him, but, rather, to prevent violence at the Jail and to promote the safety and security of Jail staff and inmates. As the record supports the conclusion that plaintiff's classification to administrative segregation was reasonably related to a legitimate government objective; *i.e.,* maintaining institutional security and preserving internal order and discipline, defendants are entitled to summary judgment with respect to plaintiff's claim that he was placed in administrative segregation without good cause.

REPORT AND RECOMMENDATION
PAGE - 8

Plaintiff not only complains about his classification to administrative segregation, he also complains that he was denied access to outside recreation during the time he was housed in the administrative segregation module. In a declaration submitted in support of defendants' summary judgment motion, Jail Operations Captain Christopher Bly explains that, pursuant to Jail policy, inmates housed in administrative segregation are on 23 hour lockdown and are allowed out of their cells on a rotating time schedule. (Dkt. No. 18 at 3.) Jail policy also provides that inmates are allowed limited access to the outdoor recreation area, but excepts from the outdoor recreation provision segregation inmates with documented safety and security issues. (*See* Dkt. No. 18 at 3 and Ex. C at 2.)

According to Captain Bly, outdoor recreation time for administrative segregation inmates is scheduled by the Jail custody deputy in charge of the administrative custody module. (Dkt. No. 4.) Plaintiff asserts in his complaint that while in secured housing he had "asked every officer for outside recreation time . . . and been refused by every single one." (Dkt. No. 5 at 3.) He also asserts that, on one occasion, Sergeant Moody told him that inmates in segregation do not get outdoor recreation. (*Id*.)

Defendants, in their motion papers, do not dispute plaintiff's assertion that he was not provided access to outdoor recreation while housed in administrative segregation nor do they offer any clear explanation as to why plaintiff's access to outside recreation was restricted. The record certainly suggests that such a restriction, assuming it was imposed, was related to the safety and security issues which resulted in plaintiff's administrative segregation placement in the first instance. Regardless, however, plaintiff offers no evidence that any of the named defendants was responsible for what plaintiff claims were repeated denials of his requests for access to outside recreation, or that such denials, in the circumstances alleged, implicate federal

REPORT AND RECOMMENDATION
PAGE - 9

constitutional concerns. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claim regarding access to outside recreation as well.

### Strike Under § 1915(g)

Defendants have requested in their summary judgment motion that a strike be assessed against plaintiff under 28 U.S.C. § 1915(g) because this action is frivolous and/or malicious. While defendants have persuaded this Court that they are entitled to judgment as a matter of law with respect to the claims asserted by plaintiff in his complaint, they have not persuaded this Court that the instant action was clearly frivolous. Under these circumstances, this Court concludes that assessment of a strike under § 1915(g) is not appropriate.

### CONCLUSION

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted and that this action be dismissed with prejudice. This court further recommends that no strike be assessed against plaintiff in this matter. A proposed order accompanies this Report and Recommendation.

DATED this 12th day of January, 2011.

/s/ BRIAN A. TSUCHIDA
BRIAN A. TSUCHIDA
United States Magistrate Judge